LACO TRADING Co. *v.* UNITED STATES (No. 5131)*

United States Court of Customs and Patent Appeals, January 23, 1964

*Stein and Shostak* (*Marjorie M. Shostak* and *S. Richard Shostak*, of counsel) for appellant.

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, for the United States.

[Oral argument November 7, 1963, by Miss Shostak and Mr. Vance]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr., Associate Judges

WORLEY, Chief Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, First Division, 45 Cust. Ct. Rep. 336, and on rehearing 49 Cust. Ct. Rep. 252, sustaining the collector's classification of the imported " 'Oplen' Viewers model 11" as "optical instruments" under paragraph 228(b) of the Tariff Act of 1930, dutiable at 45 per centum

*C.A.D. 833.

ad valorem. Appellant maintains that the viewers are properly classifiable as microscopes under that same paragraph as modified by the Protocol of Accession of Japan to GATT, T.D. 53865, dutiable at 25 per centum ad valorem.

The statutes involved read:

Par. 228.

\*          \*          \*          \*          \*          \*          \*

(b) Azimuth mirrors, parabolic or mangin mirrors for searchlight reflectors, mirrors for optical, dental, or surgical purposes, photographic or projection lenses, sextants, octants, opera or field glasses (not prism binoculars), telescopes, microscopes, all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem.

Paragraph 228(b) as modified by T.D. 53865:

Microscopes, finished or unfinished, not specially provided for, valued each—
Under $25_____ 25% ad val.

The imported article is described by the Customs Court as follows:

\* \* \* It is a viewer—bought and sold as such—that is designed, and exclusively used, for viewing color photographs fitted in a cardboard frame, the overall dimensions of which are 2 inches by 2 inches. Examination of the sample photograph slide in evidence \* \* \* shows that the color transparency is 1½ inches long by 1 inch wide, and that it is securely fitted into a cardboard frame, 2 inches square. Essential to the functioning of the viewer in question are the optical component and an electrical system, which are enclosed in a conveniently shaped housing. The optical component consists of two lenses of 2-power magnification, whose sole purpose is to enlarge or magnify the color photograph on the slide being viewed. The electrical system includes two contacts, an upper and a lower, that go to a small electric bulb, which is fitted behind a translucent plastic substance, measuring 1½ inches by 1¼ inches, that spreads "the light evenly throughout the viewing surface" \* \* \* and serves as a background for the photographic slide being viewed. A switch, fitted to the base of the frame plate, activates the electrical energy supplied by two small batteries to light the electric bulb. The viewer in question functions by inserting a 2-inch by 2-inch slide in the slot at the top and exerting light finger pressure, causing the slide to press down on the "top contact which makes connection with the contact at the bottom which short-circuits the battery energy through the bulb, which produces the electricity." \* \* \* The electrical system is essential to supply a source of light in the housing so the optical component can be useful in showing the slide.

The Customs Court quoted several well known definitions of the word "microscope" from dictionaries, the Encyclopedia Britannica and Van Nostrand's Scientific Encyclopedia and concluded that a microscope was

\* \* \* an instrument which serves to aid the naked eye in *the examination of minute objects*, a function that connotes general usage in different kinds of work that may include industrial as well as scientific branches of research. The merchandise in question is not such an instrument. On the contrary, the viewer under consideration is a device that is made for the extremely limited

purpose of viewing color photographs in slides, 2 inches square, that fit the slot in the viewer. * * *

Appellant argues that the Customs Court improperly relied on definitions pertaining to *compound* microscopes as opposed to *simple* microscopes, citing a number of authorities including Webster's New International Dictionary, 2d Ed., Unabridged, 1936, which defines a microscope as:

microscope. * * * 1. An optical instrument, consisting of a lens, or combination of lenses, for making enlarged or magnified images of minute objects. The *simple*, or *single*, *microscope*, consists merely of a single lens or magnifying glass set in a frame. In this form of instrument the rays of light which enter the eye proceed directly from the object itself. The *compound microscope* requires an *objective* and an *eyepiece*, commonly mounted in a *drawtube*, * * *.

Appellant further contends that

The presence of a housing, stage, and illuminating feature in the viewers at bar does not remove them from classification as microscopes, since such features are recognized by the lexicographers as parts of microscopes. * * *

The Government urges that slide viewers do not fall within the common meaning of the term microscopes; that under all recognized authorities, a viewer is neither a simple microscope nor a compound microscope; and states:

* * * We disagree with appellant's characterization of simple and compound microscopes as representing "extremes" of that type of optical instrument. *There are no other kinds*—if the slide viewer does not come within the common understanding of a simple or compound microscope, it is not a microscope. There are no "in betweens"; * * *.

Webster's New International Dictionary, 3d Ed., Unabridged, 1961, defines a viewer as:

* * * b: an optical device of any of several forms used to assist in viewing (as photographic transparencies).

The protest herein refers to the merchandise as "slide viewers," it is invoiced as "slide viewers," the testimony of the witnesses refers to the merchandise as a "viewer" and the instruction sheet accompanying the importation refers to these articles as "viewers." A Government witness testified:

Q. What is your occupation? A. We are distributors and importers of photographic and sound products.
Q. What is the name of your company? A. Craig Corporation.
Q. Do you sell slide viewers? A. Yes.

*       *       *       *       *       *       *

Q. Under what name do you sell Exhibit A? A. It is an Argus viewer.
Q. Do you call these slide viewers? A. Yes.
Q. Have you ever sold it as a microscope? A. No.
Q. Do you consider it a microscope? A. No.

Not everything that contains magnifying means is necessarily a microscope in a tariff sense. The article at bar has an optical component, an electrical system, an illuminating screen, and a housing therefor. Surely the mere presence of a magnifying lens does not of itself make the instant viewer a microscope as that term is commonly understood.

As the opinion of the Customs Court aptly points out

* * * the mere possession of magnifying properties in a certain commodity will not establish classification of the merchandise as a microscope, *to the exclusion of all other considerations*. * * * (Emphasis supplied.)

Items which have not been classified as microscopes, although they have magnifying properties, include bone charms which, when held to the eye, disclose a magnified picture and were found dutiable as optical instruments in *International Forwarding Co.* v. *United States*, 53 Treas. Dec. 981, Abstract 5788.

In *United States* v. *Loffredo Bros. et al.*, 46 CCPA 63, C.A.D. 697, we held that a novelty item consisting of two tube simulating binoculars, each tube having an eyepiece and an objective lens, the eyepiece serving to enlarge a photographic transparency mounted on the inside of the objective lens was properly classified by the collector as an optical instrument.

We have examined the cases cited by appellant but do not find them controlling here. In particular, *United States* v. *Bliss & Co. et al.*, 6 Ct. Cust. Appls. 433, T.D. 35980, relates to the definition of "optical instruments" and only incidentally defines microscopes. Both that case and *Sussfeld, Lorsch & Co.* v. *United States*, 30 Treas. Dec. 265, T.D. 36174, are clearly distinguishable from the instant case on the fact that a viewer is not designed for the magnification of objects generally but to permit the viewing of 2 x 2 color transparencies.

Considering all relevant facts, we do not think that the imported slide viewers can fairly be held to fall within the common meaning of the term microscope. There being no specific provision for viewers they must therefore be classified as optical instruments.

The judgment is *affirmed*.